UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED EUGENE SHALLOWHORN, CDCR #P-13049,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>HOPPER, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 25-cv-0222-MMA (MMP)<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**<br><br>[Doc. No. 3]<br><br>**2) DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

Plaintiff Alfred Eugene Shallowhorn, a state prisoner, has filed this civil rights action pursuant to 42 U.S.C. § 1983. Doc. No. 1. This action was initially dismissed without prejudice for failure to pay the civil filing fee or file a motion to proceed in forma pauperis ("IFP"). Doc. No. 2. Plaintiff has now filed an IFP motion. Doc. No. 3.

## I. IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55,

although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

    In support of his IFP motion, Plaintiff has submitted a copy of his Prison Certificate attested to by a trust account official. Doc. No. 3 at 6. The document shows he had an average monthly balance of $0.00 and average monthly deposits of $0.00, with an available balance of $0.00. *Id*. The Court **GRANTS** Plaintiff's motion to proceed IFP and assesses no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered.") Pursuant to 28 U.S.C. § 1915(b)(2), the agency having custody of Plaintiff will forward payments to the Clerk pursuant to the installment provisions of 28 U.S.C. § 1915(b)(1)&(2) until the $350 statutory fee is paid

in full.

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Plaintiff's Allegations

Plaintiff alleges he "has a mental health chrono to have his T.V. for his mental support (as well as plaintiff's use sports (basketball)) to relieve stress, depression, etc.

which is part of his mental stability process." Doc. No. 1 at 7. On March 11, 2024, while housed at Centinela State Prison in Imperial, California, Defendant Captain Hopper, who approved Plaintiff's television chrono, ordered Correctional Officer John Doe #1 to remove the television from Plaintiff's cell without authorization or legal cause. *Id*. at 7-8. Plaintiff filed a 602-inmate grievance requesting Hopper be arrested for misdemeanor theft of the television, claiming he did so in retaliation for Plaintiff's refusal to be transferred. *Id*. at 8-9. Hopper "tried to cover up" by contending the medical chrono expired, but it has no expiration date, and Hopper "emailed medical and mental health to stop helping plaintiff and leave it up to custody to deal with plaintiff." *Id*. at 9.

Defendant Correctional Officer Carrillo took Plaintiff's television on several occasions, and although it was always returned, the incidents included Plaintiff being handcuffed while correctional staff talked and pointed at him. *Id*. at 10. Carrillo was very upset the television was returned and told staff, "what he (Carrillo) says goes nothing else fucking matters." *Id*. at 11. The harassment heightened when staff prevented Plaintiff from transferring from Centinela A-yard to C-yard, and a conspiracy arose to transfer Plaintiff out of Centinela because of "602s and civil complaints." *Id*. Plaintiff alleges he was ordered transferred to Calipatria State Prison for filing multiple 602 inmate grievances and complaints against staff and the administration, and contends the transfer was expedited, showing a commitment to punish and retaliate. *Id*. at 11-12. Hopper was on the committee which approved the transfer, along with Velez and Martinez, who told Plaintiff the transfer was a collective decision. *Id*. at 12-13.

Plaintiff alleges he went on a hunger strike when Hopper took his television because he refused to be transferred, and for three days and nights he walked up and down in front of the program office in protest of his transfer order and the loss of his television. *Id*. at 13-14. Hopper told staff Plaintiff was trying to manipulate the administration to get his television back. *Id*. at 14. Plaintiff alleges that such manipulation by Hopper of staff is common to cover up staff wrongdoing. *Id*. at 15. He claims Hopper is the head of a conspiracy, joined by Defendants Correctional Officers

Carrillo and Castillo, Dr. Kahn, and Sergeants Estrada and Matus, as well as conspirators Velez and Martinez who are not named as Defendants, "and other c/o staff," to punish Plaintiff by taking his television, transferring him out of Centinela and interfering with his hunger strike. *Id*. at 15-16. Plaintiff alleges Defendant Warden Guzman was aware of those events but refused to answer Plaintiff's letters or speak with him. *Id*. at 16-17.

Plaintiff alleges Defendant Sergeant Estrada denied his proposal to end the hunger strike because Hopper told him to do so, in violation of CDCR regulations and in disregard of Plaintiff's medical needs. *Id*. at 17. Estrada threatened violence to remove Plaintiff from protesting in front of the program office, and lied when he said the threat came from the program office. *Id*. at 17-18. Estrada told Plaintiff he was "getting off this yard one way or another," tried to coerce him into ending his hunger strike, reminded him that the administration did not give him anything after his last hunger strike and said they would not give him anything this time. *Id*. at 18. The watch commander, who had a higher rank than Hopper, told Plaintiff he would try to get his television back, but failed to do so because Estrada told the watch commander that Hopper said not to. *Id*. at 19.

Plaintiff claims that after Castillo and Velez shared his prison photograph, his inmate grievances and his medical history with staff, all the Defendants and others have targeted him, were told not to help him, and have looked at him in his cell and pointed at him with harsh looks and stares and angry facial expressions. *Id*. at 19-21. Defendant Dr. Khan allegedly conspired with Hopper to interfere with Plaintiff's hunger strike to try to force and manipulate Plaintiff to eat to end the hunger strike, refused to acknowledge Plaintiff had changed his hunger strike to a "non-solid food hunger strike," and refused to provide him "medical drinks." *Id*. at 21-22. Plaintiff received medical drinks but did not drink them, yet Hopper reported that Plaintiff had. *Id*. at 22-23. Prison staff threw the medical drinks away unused but refused to document that fact in violation of prison regulations. *Id*. at 23-24.

Plaintiff alleges Defendant Castillo "has been biased and prejudiced towards blacks in multiple buildings [with a] very hostile tone and threatening manner." *Id*. at 24.

Castillo allegedly "stoked plaintiff and treated plaintiff indifferent by denying Plaintiff his C-Status phone call." *Id*. Castillo searched Plaintiff's cell and "tried to set plaintiff up to interfere with his hunger strike by finding open food containers" and "left bad reports and counseled other staff coming on next shift to target plaintiff and not to give plaintiff nothing." *Id*. at 25.

Plaintiff claims Defendants failed to follow prison rules and regulations, denied him due process, conspired to harass, steal, threaten, falsely accuse, retaliate and interfere with his hunger strike, committed medical malpractice, destroyed legal documents, failed to respond to his complaints, botched investigations, interfered with his right to protest by hunger strike, and subjected him to cruel and unusual punishment. *Id*. at 2-6.

## C.     Eighth Amendment Claim

Plaintiff claims Defendants were deliberately indifferent to his medical needs and committed medical malpractice when Hopper and Carrillo took his television which was necessary to his mental wellbeing, when Hopper and Dr. Khan interfered with his hunger strike, and when Castillo and Velez shared Plaintiff's medical history with prison staff. Doc. No. 1 at 5, 7-11, 17-25. "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Plaintiff must plausibly allege: (1) "the existence of a serious medical need" and (2) the prison official's "deliberate indifference" to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Prison officials are deliberately indifferent when they "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to establish deliberate indifference to his medical needs, Plaintiff must allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official is liable when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer*, 511 U.S. at 837.

Plaintiff's allegations of a failure to provide medical care, medical malpractice during his hunger strike fail, or the removal of his television, fail to allege facts plausibly suggesting any Defendant was aware of an excessive risk to his health and deliberately disregarded that risk, as there are no factual allegations regarding what medical needs went unmet or how he was injured as a result. *Id*.; *Jett*, 439 F.3d at 1096; *see also Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Iqbal,* 556 U.S. at 678 (a complaint is subject to dismissal for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," as the "mere possibility of misconduct" falls short of the plausibility standard.) The allegations of threats, stares and verbal abuse do not state a plausible claim for relief. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("[I]t trivializes the Eighth Amendment to believe a threat constitutes a constitutional wrong."); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.")

Plaintiff's Eighth Amendment cruel and unusual punishment claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

**D.     Retaliation Claim**

Plaintiff alleges the Defendants took his television, attempted to transfer him, and interfered with his hunger strike in retaliation for his refusal to accept a transfer and for filing inmate grievances and civil complaints. Doc. No. 1 at 2, 8-9, 12. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.") Plaintiff must allege a causal connection between an adverse action and protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff's retaliation claim lacks *factual* allegations plausibly indicating that any person took any action because of Plaintiff's protected conduct. Rather, Plaintiff merely alleges his television was taken just after he refused the transfer. Doc. No. 1 at 8-9. Although the timing of a defendant's actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity); *see also Iqbal,* 556 U.S. at 678 (the "mere possibility of misconduct" falls short of meeting the plausibility standard). Absent factual, rather than conclusory, allegations plausibly alleging a causal connection between adverse actions and Plaintiff's protected conduct, the Complaint fails to state a retaliation claim. *Watison*, 668 F.3d at 1114; *Rhodes*, 408 F.3d at 568.

Plaintiff's retaliation claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

**E.     Conspiracy Claim**

Plaintiff alleges that Defendant Hopper is the head of a conspiracy joined by Defendants Carrillo, Castillo, Dr. Kahn, Estrada, Matus, as well as Velez and Martinez who are not named as Defendants, "and other c/o staff," to punish Plaintiff by taking his television, transferring him out of Centinela and interfering with his hunger strike. Doc. No. 1 at 2-3, 11, 15-24. To state a conspiracy claim, Plaintiff "must show 'an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423,

441 (9th Cir. 2002) (citations omitted).  The allegations of conspiracy in the Complaint here fail as entirely conclusory, as there are no factual allegations plausibly supporting a finding that any Defendant agreed to violate his federal constitutional rights.  *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not support a § 1983 claim); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.")

The conspiracy claim is dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim.  *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

**F.     Due Process Claim**

Plaintiff alleges his federal due process rights were violated when: (1) his television was stolen, (2) his transfer order was expedited in violation of prison rules and regulations, and (3) his grievances and complaints were not responded to and the investigation into his complaints was botched.  Doc. No. 1 at 6-11.  When a state provides an adequate post-deprivation remedy for the taking of property, through a state tort action for example, the existence of that remedy satisfies the requirements of due process.  *Zinermon v. Burch*, 494 U.S. 113, 128 (1990).  The Ninth Circuit has recognized that California law provides such a remedy.  *See Barrett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).  Thus, Plaintiff's claim that Defendants deprived him of his television in violation of federal due process fails to state a claim upon which § 1983 relief may be granted.  *Id*.

Plaintiff has also failed to plausibly allege a claim based on Defendants' failure to respond to his complaints and grievances or conduct an adequate investigation into his complaints.  "The Supreme Court has held that . . . to obtain a protectable right an individual must have a legitimate claim of entitlement to it, [but] there is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (citations and quote marks omitted); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a

specific prison grievance procedure.")

Plaintiff has failed to state a claim for denial of due process regarding Defendants' failure to follow prison rules and regulations regarding his transfer because inmates do not have a due process right to reside at a particular prison. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("[A] prisoner has no constitutional right to a particular classification status."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a particular prison); *Sandin v. Conner*, 515 U.S. 472, 480 (1995) ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed.")

Plaintiff claims Defendant Warden Guzman is liable for the actions of the other Defendants because Guzman was aware of the events but refused to answer Plaintiff's letters or speak with him. Doc. No. 1 at 16-17. Guzman's role as a supervisory official is not sufficient to support a claim under § 1983. *See Iqbal*, 556 U.S. at 677 ("[E]ach government official [in a § 1983 suit], his or her own title notwithstanding, is only liable for his or her own misconduct."); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983.") The Complaint as presently drafted fails to allege facts which if proven would support a § 1983 claim against Warden Guzman in his supervisory role.

Plaintiff's due process claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

**G. Access to Courts Claim**

Plaintiff claims in an entirely conclusory manner "destruction of legal documents." Doc. No. 1 at 2. Inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). In order to state such a claim, Plaintiff must allege

facts showing actual injury arising from the lack of access to his legal materials, that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. He must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Plaintiff has failed to satisfy any of those pleading standards with respect to a denial of access to courts claim, as he has not identified any underlying claim he was frustrated from presenting to the courts.

To the extent Plaintiff intended to bring a denial of access to the courts claim it is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

### H.    Equal Protection Claim

Plaintiff alleges Defendant Castillo "has been biased and prejudiced towards blacks in multiple buildings [with a] very hostile tone and threatening manner." Doc. No. 1 at 24. He alleges Castillo "treated plaintiff indifferent by denying Plaintiff his C-Status phone call," searched his cell, "tried to set plaintiff up to interfere with his hunger strike by finding open food containers," and "left bad reports and counseled other staff coming on next shift to target plaintiff and not to give plaintiff nothing." *Id.* at 24-25.

The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A plaintiff can state an equal protection claim by setting forth facts which plausibly allege intentional discrimination based on membership in a protected class. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics

protected by the Equal Protection Clause). There are no factual allegations in the Complaint which plausibly allege that any Defendant intentionally discriminated against Plaintiff because of a protected status. To the extent Plaintiff intended to bring an equal protection claim it is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

I. **Leave to Amend**

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### III. CONCLUSION

For all the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a). Doc. No. 3.

2. **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST CLEARLY IDENTIFY THE NAME AND CASE NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) and **GRANTS** Plaintiff thirty (30) days leave from the date of this Order in which to file an

Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED**.

Dated:  May 27, 2025

HON. MICHAEL M. ANELLO
United States District Judge