UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED EUGENE SHALLOWHORN, CDCR #P-13049,<br><br>Plaintiff,<br><br>vs.<br><br>HOPPER, et al.,<br><br>Defendants. | Case No.: 3:25-cv-0222-RBM-MMP<br><br>**ORDER:**<br><br>**(1) DENYING MOTION FOR EXTENSION OF TIME TO AMEND AS MOOT; and**<br><br>**(2) DISMISSING FIRST AMENDED COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

On January 29, 2025, Plaintiff Alfred Eugene Shallowhorn, a state prisoner proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) On May 27, 2025, the Court granted leave to proceed IFP and dismissed the complaint for failure to state a claim. (Doc. 4.) Plaintiff was later granted an extension of time to amend on or before September 30, 2025. (Doc. 7.)

On September 2, 2025, Plaintiff filed a motion for an extension of time to amend and filed a First Amended Complaint ("FAC") on September 22, 2025. (Docs. 8–9.) Because the FAC was timely filed, Plaintiff's Motion for an extension of time to amend is **DENIED** as moot.

1

I.   **Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

   A.   **Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (section 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

   B.   **Plaintiff's Allegations**

Plaintiff alleges he has a mental health chrono allowing him to possess a television for mental health support and stress relief. (Doc. 9 at 2.) Defendant Captain Hopper, who had originally approved the television, ordered it removed from Plaintiff's cell "without authorization or legal cause allegedly in retaliation for Plaintiff's refusal to transfer to another yard/institution." (*Id*. at 2, 5, 7.) Plaintiff filed a 602-inmate grievance requesting Hopper be arrested for misdemeanor theft of the television, states that Hopper "tried to cover up removal" of the television by falsely stating the medical chrono had expired, and

alleges that Hopper sent emails to "mental health" asking them to stop helping Plaintiff and leave it up to Hopper and the administration "to deal with plaintiff." (*Id*. at 5–7.) Plaintiff was refused copies of those emails, "which is part of the conspiracy to illegally transfer plaintiff in retaliation" for filing prior grievances, and claims Hopper's actions interfered with and denied him "mental health and medical needs." (*Id*. at 6–9.)

Plaintiff went on a hunger strike in protest of the taking of his television, for the "illegal transfer action," and for "two retaliatory write-ups and correction of Plaintiff's good time points." (*Id*. at 9–10.) He walked up and down in front of the program office for several hours each morning for two days requesting the return of his television while staff laughed and joked and refused to assist him in speaking with Defendant Warden Guzman or other staff. (*Id*. at 10–11.) Defendant Sergeant Estrada told Plaintiff that Hopper said not to return the television and to give Plaintiff food items to end his hunger strike and refused to inform Hopper or Guzman that Plaintiff would end his hunger strike with the return of his television. (*Id*. at 11.) Plaintiff refused the food and was told to leave the program office and return to his cell pending a yard release. (*Id*. at 12.) When Plaintiff stated that they were denying him his right to protest, Estrada told him the watch commander said they could use force to return him to his cell. (*Id*. at 12–13.) Estrada told Plaintiff "'we' didn't give you nothing the first hunger strike so why would 'we' now," and "released yard but not Plaintiff['s] building." *Id*. at 13. The watch commander said if Plaintiff would return to his cell, Estrada would come there to speak with him, and he returned to his cell. *Id*.

Estrada and the watch commander went to Plaintiff's cell where the watch commander denied that he told Estrada that correctional staff could use force to remove Plaintiff from the program office. (*Id*. at 14.) The watch commander said he was checking on the television situation but wanted to wait for Hopper to return. (*Id*.) While they were speaking, other inmates were yelling for them to release the yard. (*Id*.) Plaintiff told Estrada and the watch commander that he no longer wished to speak with them and that he thought they were inciting the other inmates to violence toward him by blaming him for

the delay in releasing the yard in his building. (*Id.*) They continued to try to talk for 20–30 minutes, delaying the yard release, and then spoke to an inmate porter for about 15 minutes while pointing at Plaintiff. (*Id.* at 15.) The inmate porter told Plaintiff that he and the other inmates were upset Plaintiff was causing a delay in the yard release. (*Id.*) Plaintiff claims Estrada delayed the yard release and blamed it on his hunger strike to create a dangerous environment as a pretext to transfer him. (*Id.* at 15–16.) He states he "was treated differently but not physical assaulted," and that his hunger strike was unnecessarily prolonged causing him to change to a non-solid food hunger strike. (*Id.* at 16–17.)

Plaintiff claims Defendant Correctional Officer Carrillo joined the conspiracy by writing Plaintiff up for refusing the transfer and delaying an officer's duties. (*Id.* at 17–18.) Carrillo allegedly harassed Plaintiff, ordered other staff to treat him differently, falsely claimed he found alcohol in Plaintiff's cell, gave Plaintiff's shoes to an inmate of another race causing a race riot, allowed other inmates to see Plaintiff's medical records, told other inmates if they were seen talking to Plaintiff they would be on Carrillo's "shit list," allowed inmates other than Plaintiff to have a television when they were on "C status," threw away his inmate complaints and refused to sign them, searched his cell and took food wrappers, accused him of eating, and threatened to write him up for violating his hunger strike in order to disrupt his protest. (*Id.* at 18–23.) Plaintiff alleges Defendant Sergeant Matus failed to help Plaintiff prevent Carrillo's actions, and that Defendant Correctional Officer Castillo threw away his inmate requests, searched his cell and threatened to write him up for violating hunger strike rules. (*Id.* at 22–24.) He alleges Defendant Dr. Khan abandoned his medical needs by refusing to issue Ensure during the non-solid food portion of the hunger strike, thereby helping Hopper force him off his hunger strike. (*Id.* at 24–25.)

Plaintiff claims the Defendants: (1) violated his right to due process by depriving him of a property interest in his television; (2) conspired to violate his rights to due process, access to the courts and equal protection; (3) retaliated against him for filing grievances, going on a hunger strike and refusing a transfer; (4) subjected him to unequal treatment

and discrimination in violation of equal protection; and (5) denied him access to the courts by denying him copies of emails and throwing away his inmate complaints. (*Id*. at 3–4.)

### C. Plaintiff's Claims

#### 1. Retaliation Claim

Plaintiff alleges the Defendants took his television, attempted to transfer him, interfered with his hunger strike and incited inmates to blame him for the yard release delay in retaliation for his refusal to accept a transfer, for filing inmate grievances and for protesting by going on a hunger strike. (Doc. 9 at 5–9, 15–16, 18.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001). However, a plaintiff must allege a causal connection between an adverse action and protected conduct. *Watison*, 668 F.3d at 1114.

The Court informed Plaintiff in its prior dismissal order that his retaliation claim lacked factual allegations plausibly indicating any person took any action because of his protected conduct. (Doc. 4 at 8.) Although he alleged his television was taken just after he refused a transfer, and the timing of a defendant's actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is not enough to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

The FAC similarly lacks factual rather than conclusory allegations plausibly alleging a causal connection between any adverse actions and Plaintiff's protected conduct. Rather, Plaintiff merely alleges he believes the Defendants had a retaliatory intent, (*see* Doc. 9 at 13), and indicates they "briefed each other and left notes" regarding Plaintiff's actions and conversed with each other about him, (*id*. at 22–24), but does not identify any facts to support a causal connection between his protest or grievances and their actions. He once

again relies on speculation, which fails to state a retaliation claim. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act); *Pratt*, 65 F.3d at 808 (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity); *Iqbal,* 556 U.S. at 678 (the "mere possibility of misconduct" falls short of meeting the plausibility standard).

Accordingly, the retaliation claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### 2. Due Process Claim

Plaintiff claims the Defendants violated his right to due process by depriving him of his property interest in his television and access to mental health support. (Doc. 9 at 3.) With respect to the loss of his television, Plaintiff was instructed in the prior dismissal order, (*see* Doc. 4 at 9), that when a state provides an adequate post-deprivation remedy for the taking of property, through a state tort action for example, the existence of that remedy satisfies the requirements of due process. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). The Ninth Circuit has recognized that California law provides such a remedy. *See Barrett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994). Thus, Plaintiff's claim that Defendants deprived him of his television in violation of federal due process once again fails to state a claim upon which § 1983 relief may be granted. *Id*.

Plaintiff has failed to plausibly allege a due process claim based on Defendants' failure to accept his complaints or forward them to the warden, or by failing to follow prison rules and regulations regarding his transfer or his hunger strike. "The Supreme Court has held that . . . to obtain a protectable right an individual must have a legitimate claim of entitlement to it, [but] there is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (citations and quote marks omitted); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (there is no

"constitutional entitlement" to a prison grievance procedure.); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("[A] prisoner has no constitutional right to a particular classification status."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a particular prison); *Sandin v. Conner*, 515 U.S. 472, 480 (1995) ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed.")  The allegations of interference with Plaintiff's medical and mental health needs are addressed below in connection to the Eighth Amendment claim.

The due process claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim.  *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### 3. Access to Courts Claim

Plaintiff alleges he was denied access to the courts when Defendants denied him copies of emails and threw away his inmate complaints.  (Doc. 9 at 4.)  Inmates have a constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  As Plaintiff was instructed in the prior dismissal order (*see* Doc. 4 at 10–11), in order to state an access to courts claim, he must allege facts showing actual injury arising from the lack of access to his legal materials, that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.  To do so he must allege the loss of a "non-frivolous" or "arguable" underlying claim.  *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002).  The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417.  The FAC once again fails to satisfy any of those pleading standards with respect to a denial of access to courts claim, as Plaintiff has not identified any underlying claim he was frustrated from presenting to the courts, but once again merely alleges interference with internal prison grievance procedures.

The denial of access to the courts claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim.  *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### 4. Equal Protection Claim

Plaintiff alleges he was subject to "unequal treatment and discrimination," "was treated differently but not physical assaulted," and that other inmates on "C status" were permitted to have televisions in their cells. (Doc. 9 at 3, 16, 22.) The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). As Plaintiff was instructed in the prior dismissal order (*see* Doc. 4 at 11), he can state an equal protection claim by setting forth facts which plausibly allege intentional discrimination based on membership in a protected class. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics protected by the Equal Protection Clause). There are no facts in the FAC which plausibly allege that any Defendant intentionally discriminated against Plaintiff because of a protected status.

A prisoner may also state a "class of one" equal protection claim by alleging that similarly situated prisoners were intentionally treated differently and that he was singled out for disparate treatment without a rational relationship to a legitimate purpose. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (discussing reliance on "class of one" equal protection theory when plaintiff is not in a protected class). The FAC contains no factual allegations supporting a plausible inference that the treatment Plaintiff allegedly received from the Defendants—the removal of his television, interference with his hunger strike, refusal to process or pass on his inmate complaints, attempted transfer, cell searches or disciplinary write ups—were done in order to intentionally treat Plaintiff differently from other inmates without a rational relationship to a legitimate purpose. The FAC contains only conclusory allegations that the television was taken without justification and that the other actions were

taken in retaliation for Plaintiff's protected activities which are insufficient to plausibly allege an equal protection claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim).

The equal protection claim in the FAC is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### 5. Conspiracy Claim

Throughout the FAC Plaintiff alleges the Defendants conspired to violate his rights. Plaintiff was informed in the Court's prior dismissal order that to plausibly allege a conspiracy claim he "must show 'an agreement or 'meeting of the minds' to violate constitutional rights." (Doc. 4 at 8–9 (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).) The Court found the allegations of conspiracy in the original complaint failed as entirely conclusory, as there were no factual allegations plausibly supporting a finding that any Defendant agreed to violate Plaintiff's federal constitutional rights. *Id*. (citing *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)) (conclusory allegations of conspiracy did not support a § 1983 claim) and *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.") Plaintiff has not cured that defect in the FAC. Rather, he alleges the Defendants "conversate and leave notes for each other on plaintiff's actions and grievances" (Doc. 9 at 22–23), but there are once again no factual allegations plausibly suggesting any agreement among the Defendants to violate his constitutional rights.

The conspiracy claim is dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### 6. Eighth Amendment Claim

Finally, Plaintiff alleges Defendants took his television which was necessary to his mental wellbeing, deprived him of Ensure and otherwise interfered with and prolonged his hunger strike, shared his medical history with prison staff, and laughed and joked at his

requests for assistance. (Doc. 9 at 2, 6–7, 11, 16–17, 20, 24–25.) The Court will liberally construe these allegations as an attempt to state an Eighth Amendment deliberate indifference to medical care claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that when a plaintiff appears pro se, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt with respect to what claims are raised); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting that the rule of liberal construction is "particularly important" in civil rights cases).

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Plaintiff was informed in the prior dismissal order (*see* Doc. 4 at 6–7), that in order to state such a claim he must plausibly allege: (1) "the existence of a serious medical need" and (2) the prison official's "deliberate indifference" to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Prison officials are deliberately indifferent when they "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To establish deliberate indifference to his medical needs, Plaintiff must allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official is liable when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The FAC fails to allege facts plausibly suggesting any Defendant was aware of an excessive risk to his health and deliberately disregarded that risk, as there are no factual allegations regarding what medical needs went unmet, other than a passing reference to being denied Ensure during the non-solid food portion of his hunger strike, or how he was injured as a result. *Id.*; *Jett*, 439 F.3d at 1096; *see also Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Iqbal,* 556 U.S. at 678 (a complaint is subject to

dismissal for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," as the "mere possibility of misconduct" falls short of the plausibility standard). The allegations of stares and verbal abuse do not state a plausible claim for relief. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("[I]t trivializes the Eighth Amendment to believe a threat constitutes a constitutional wrong."); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.")

To the extent Plaintiff intended the FAC to include an Eighth Amendment claim it is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### D. Leave to Amend

In light of Plaintiff's pro se status, the Court grants a final opportunity to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## II. Conclusion and Orders

For all the reasons discussed, the Court **DENIES** Plaintiff's Motion for an extension of time to amend [Doc. 8] as moot, **DISMISSES** Plaintiff's FAC for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and **GRANTS** Plaintiff until January 5, 2026 to file a Second Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Second Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Second Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading

supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to file a Second Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED**.

Dated:  December 5, 2025

*Ruth Bermudez Montenegro*
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE