UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALFRED EUGENE SHALLOWHORN, CDCR #P-13049,

Plaintiff,

vs.

HOPPER, et al.,

Defendants.

Case No.: 3:25-cv-00222-RBM-MMP

**ORDER:**

**1) CONSTRUING SUBMISSION AS MOTION FOR RELIEF FROM JUDGMENT AND REQUEST FOR EXTENSION OF TIME TO FILE SECOND AMENDED COMPLAINT;**

**2) GRANTING MOTION FOR RELIEF FROM JUDGMENT AND VACATING JUDGMENT;**

**3) GRANTING REQUEST FOR EXTENSION OF TIME; and**

**4) DISMISSING SECOND AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b) WITHOUT FURTHER LEAVE TO AMEND**

On January 29, 2025, Plaintiff Alfred Eugene Shallowhorn, a state prisoner proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) On

May 27, 2025, the Court granted Plaintiff leave to proceed in forma pauperis ("IFP") and dismissed his complaint for failure to state a claim, with leave to amend. (Doc. 4.) On August 15, 2025, Plaintiff was granted an extension of time to file an amended complaint on or before September 30, 2025. (Doc. 7.) Plaintiff filed a First Amended Complaint ("FAC") on September 22, 2025. (Doc. 9.) On December 5, 2025, the Court dismissed the FAC for failure to state a claim with leave to amend on or before January 5, 2026. (Doc. 10.)

On April 15, 2026, not having received any communication from Plaintiff, the Court entered a judgment of dismissal based on failure to prosecute and failure to state a claim. (Doc. 11–12.) On May 7, 2026, Plaintiff filed a document titled Second Amended Complaint ("SAC"). (Doc. 13.) Attached to the SAC are two letters explaining that confusion regarding the due date for the SAC coupled with delay in receiving legal mail due to a prison lockdown prevented Plaintiff from timely filing the SAC. (Doc. 13-1 at 1–2; Doc. 13-2 at 3–4.) Also attached is a copy of what Plaintiff states is the SAC he previously mailed to the Court which the Court never received. (Doc. 13-5.)

The Court **CONSTRUES** the letters attached to the SAC as a motion for relief from the Court's April 15, 2026 judgment of dismissal and a request for an extension of time to file the SAC.

## I. Motion for relief from judgment and Request for extension of time

Where the Court's ruling has resulted in a final judgment or order, as here, a motion to reopen may be based either on Rule 59(e) (motion to alter or amend judgment), or Rule 60(b) (motion for relief from judgment) of the Federal Rules of Civil Procedure. *See Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). The motion is treated as a motion to alter or amend a judgment under Rule 59(e) if it is filed within 28 days of entry of judgment; otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001). In addition, Civil Local Rule 7.1(i) permits motions for reconsideration "[w]henever any motion or any application or petition for any

order or other relief has been made to any judge and has been refused in whole or in part, . . ." S.D. Cal. CivLR 7.1(i). Plaintiff filed this motion within 28 days of the entry of final judgment and relief is available under the Local Rule and Rule 59(e).

Because Rule 59(e) does not list specific grounds for a motion to amend or alter, the district court has discretion in granting or denying the motion. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam)). The Local Rules permit reconsideration when "new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." S.D. Cal. Civil Local Rule 7.1(i).

Plaintiff states that confusion as to when the SAC was due coupled with a delay due to a prison lockdown in his receiving the Court's order and in the Court receiving his SAC resulted in the untimely filing of the SAC. (Doc. 13-1 at 1–3; Doc. 13-2 at 3–4; Doc. 13-5 at 1.) For good cause shown, the Court **GRANTS** Plaintiff's motion for relief from judgment, **VACATES** the April 15, 2026 judgment of dismissal, and **DIRECTS** the Clerk of Court to reopen this case. The Court **GRANTS** Plaintiff's request for an extension of time to file the SAC and accepts the SAC (Doc. 13-5) as timely.

## II. Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his SAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d

1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (finding § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B. Plaintiff's Allegations**

Plaintiff alleges that he "has a mental health chrono allowing him to possess a TV for mental health support." (Doc. 13-5 at 3.) On March 12, 2024, Defendant Captain Hopper ordered the removal of the television "without authorization or legal cause allegedly in retaliation for Plaintiff's refusal to transfer to another yard/institution." (*Id*. at 3, 6.) Plaintiff filed an inmate grievance on March 12, 2024, requesting an investigation into whether Defendant Hopper retaliated against him, which was granted and an investigation opened. (*Id*. at 6–7.) Hopper "tried to cover up" by falsely contending the medical chrono had expired. (*Id*. at 7.) Plaintiff believes there are emails from Hopper to a mental health doctor asking them to stop helping Plaintiff and leave it up to Hopper and the administration "to deal with plaintiff." (*Id*. at 7–8.) Plaintiff was not permitted to view or receive copies of those emails, "which is part of the conspiracy to illegally transfer plaintiff in retaliation" for filing several inmate grievances. (*Id*. at 8–10.)

Plaintiff alleges he went on a hunger strike on March 12, 2024, in protest of the taking of his television, "the illegal transfer action," and two retaliatory write-ups. (*Id*. at 10–11.) Hopper and Defendant Sergeant Estrada violated the prison's hunger strike rules by not properly logging his refusals to accept meals. (*Id*. at 11.) He walked up and down in front of the program office on two mornings requesting the return of his television while staff laughed and joked about his protest and refused to assist him in speaking with the

warden or other staff. (*Id*. at 11–12.) On March 14, 2024, Estrada told Plaintiff that Hopper said not to return his television and to give Plaintiff food to end his hunger strike. (*Id*. at 12.) Estrada threatened violence to remove Plaintiff from protesting in front of the program office and intimidated him to return to his cell. (*Id*. at 13–14.) Estrada then released the yard but did not release Plaintiff's building, and then came to his cell with the Watch Commander and other staff while inmates were yelling to be released, which made Plaintiff feel as though they were trying to intimidate him by angering the other inmates. (*Id*. at 14–15.) After another 45 minutes, during which Estrada spoke to inmate porters, an inmate porter told Plaintiff they were not being released to the yard because of Plaintiff, which he contends was in retaliation for his hunger strike. (*Id*. at 16–17.) Estrada and staff searched his cell for hunger strike rule violations to force him to end his protest over the loss of his television, and Plaintiff believes Estrada was attempting to cause him to be assaulted by other inmates to transfer him off the yard. (*Id*. at 17–18.) Plaintiff was never physically assaulted but was treated differently by the other inmates, as the porters stopped talking to him and checking on him. (*Id*. at 17.)

Defendant Correctional Officer Carrillo wrote Plaintiff up for refusal to transfer and falsely claimed Plaintiff delayed him in his duties. (*Id*. at 19.) Plaintiff believes Carrillo was acting in retaliation because Plaintiff had previously filed grievances against Carrillo for taking his television several times, and each time it was ordered to be returned. (*Id*.) When asked by another staff member why he keeps messing with Plaintiff, Plaintiff heard Carrillo respond in front of witnesses: "fuck that it is what I say goes and write." (*Id*. at 20.) Carrillo falsely accused Plaintiff of having alcohol in his cell, gave his shoes to another inmate, and allowed other inmates to keep their televisions. (*Id*. at 20, 22.) Carrillo posted Plaintiff's private medical record of his mental health chrono on his cell door in public view, which was obtained without his consent or knowledge, and told other inmates that anyone speaking to Plaintiff would be on his shit list, resulting in Plaintiff being treated differently than other inmates. (*Id*. at 20–21.) Carrillo told the hearing officer Nunez to be sure to take Plaintiff's television, which he did. (*Id*. at 22–23.)

Defendant Correctional Officer Castillo threw away and refused to sign Plaintiff's inmate request documents and denied him his once-a-month phone call. (*Id*. at 24.) Castillo searched Plaintiff's cell on March 12, 2024, taking empty food containers, and threatened to write Plaintiff up for violating hunger strike rules in retaliation for filing grievances and going on the hunger strike. (*Id*.)

Defendant Sergeant Matus failed to write Castillo up for his actions. (*Id*. at 25.) Defendant Dr. Khan abandoned Plaintiff's medical needs by siding with Hopper to force him off his hunger strike and refusing to issue non-solid food during the hunger strike despite knowing Plaintiff had changed his hunger strike to include non-solid food. (*Id*. at 25–26.)

Plaintiff claims the Defendants: (1) deprived him of his television and mental health treatment in violation of due process; (2) conspired to violate his rights to due process, equal protection and access to the courts; (3) retaliated against him for filing grievances and going on a hunger strike; (4) subjected him to unequal treatment and discrimination in violation of equal protection; and (5) denied him access to the courts by denying him access to emails and throwing away his inmate requests. (*Id*. at 4–5.)

**C. Due Process Claim**

Plaintiff first alleges his federal due process rights were violated by the taking of his television, which interfered with his access to mental health services because he had a medical chrono which allowed him to have it to watch basketball to relieve stress. (Doc. 13-5 at 3–4, 6, 24.) When a state provides an adequate post-deprivation remedy for the taking of property, through a state tort action for example, the existence of that remedy satisfies the requirements of due process. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). The Ninth Circuit has recognized that California law provides such a remedy. *See Barrett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895). Thus, Plaintiff's claim that Defendants deprived him of his television in violation of federal due process fails to state a claim upon which § 1983 relief may be granted. *Id*. His claim that the taking interfered with his medical care is discussed separately below.

Plaintiff's due process claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004. Because Plaintiff has twice been informed of the same defect of pleading a due process claim based on the taking of his television (*see* Doc. 4 at 9; Doc. 10 at 6), and it is now clear he is unable to state a due process claim, this claim is dismissed without further leave to amend. *See Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing futility of amendment as a proper basis for dismissal without leave to amend).

**D. Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). A plaintiff can state an equal protection claim by setting forth facts which plausibly allege intentional discrimination based on membership in a protected class. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status.") (emphasis in original); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics protected by the Equal Protection Clause). Plaintiff was twice previously instructed that he had failed to present any factual allegations which plausibly allege that any Defendant intentionally discriminated against his because of a protected status. (*See* Doc. 4 at 11–12; Doc. 10 at 8–9.)

Plaintiff has not cured this pleading defect in the SAC and continues to include entirely conclusory allegations of discrimination or equal protection violations. Plaintiff's equal protection claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004. Because Plaintiff has twice been informed of the same defect of pleading and it is now clear he is unable to state an equal protection claim, this claim is dismissed without further leave to

amend. *Schmier*, 279 F.3d at 824.

**E. Access to Courts Claim**

Plaintiff claims that Defendants denied him access to the courts by denying access to emails and throwing away his inmate requests. (Doc. 13-5 at 5.) Inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). In order to state such a claim, Plaintiff must allege facts showing actual injury arising from the lack of access to his legal materials, that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. He must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Plaintiff has twice been informed that he has failed to identify any underlying claim he lost or was frustrated from presenting to the courts (*see* Doc. 4 at 10–11; Doc. 10 at 7), and the SAC does not cure that pleading defect.

Plaintiff's access to the courts claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004. Because Plaintiff has twice been informed of the same defect of pleading, and it is now clear he is unable to state an access to courts claim, this claim is dismissed without further leave to amend. *Schmier*, 279 F.3d at 824.

**F. Conspiracy Claim**

Plaintiff alleges that Defendants conspired to violate his rights to due process, equal protection and access to the courts. (Doc. 13-5 at 4.) To state a conspiracy claim, Plaintiff "must show 'an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citations omitted). Plaintiff has twice been informed that his allegations of conspiracy fail as entirely conclusory (*see* Doc. 4 at 8–9; Doc. 10 at 9), and there are again no factual allegations plausibly supporting a finding that any Defendant agreed to violate his federal constitutional rights. *See Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of

conspiracy did not support a § 1983 claim); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.") This defect of pleading was not cured in the SAC.

Plaintiff's conspiracy claim is dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004. Because Plaintiff has twice been informed of the same defect of pleading and it is now clear he is unable to state an access to courts claim, this claim is dismissed without further leave to amend. *Schmier*, 279 F.3d at 824.

**G. Retaliation Claim**

Plaintiff alleges that Defendants took his television, attempted to transfer him, and interfered with his hunger strike in retaliation for his refusal to accept a transfer to another yard or institution, for filing inmate grievances and complaints, and for protesting the taking of his television and the attempted transfer by going on a hunger strike. (Doc. 13-5 at 3, 7–11, 14, 19, 24.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.") Plaintiff must allege a causal connection between an adverse action and protected conduct. *Watison*, 668 F.3d at 1114. Plaintiff was twice previously informed of these requirements and has twice been instructed that he has failed to plausibly allege any Defendant acted with a retaliatory motive. (*See* Doc. 4 at 8; Doc. 10 at 5–6.)

Plaintiff's retaliation claim once again lacks *factual* allegations plausibly indicating that any person took any adverse action because of Plaintiff's protected conduct. Rather, Plaintiff once again includes conclusory allegations of retaliation supported at most by the

timing of the Defendants' actions. Although the timing of a defendant's actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity); *see also Iqbal,* 556 U.S. at 678 (the "mere possibility of misconduct" falls short of meeting the plausibility standard). All three versions of Plaintiff's complaint rely on speculation that any Defendant took any adverse action against him in retaliation for his protected activities. Absent factual, rather than conclusory, allegations plausibly alleging a causal connection between adverse actions and Plaintiff's protected conduct, the SAC once again fails to state a retaliation claim. *Watison*, 668 F.3d at 1114; *Rhodes*, 408 F.3d at 568.

Plaintiff's retaliation claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004. Because Plaintiff has twice been informed of the same defect of pleading and it is now clear he is unable to state a retaliation claim, this claim is dismissed without further leave to amend. *Schmier*, 279 F.3d at 824.

### H. Eighth Amendment Claim

Finally, Plaintiff claims Defendants deprived him of access to mental health services in violation of due process by taking his television. (Doc. 13-5 at 4.) The Court will liberally construe this as an Eighth Amendment claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that when a plaintiff appears pro se, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt with respect to what claims are raised); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting that the rule of liberal construction is "particularly important" in civil rights cases).

"Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Plaintiff must plausibly allege: (1) "the existence of a serious

medical need" and (2) the prison official's "deliberate indifference" to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Prison officials are deliberately indifferent when they "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to establish deliberate indifference to his medical needs, Plaintiff must allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official is liable when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff was twice previously informed that his allegations failed to plausibly allege any Defendant was aware of an excessive risk to his health and deliberately disregarded that risk. (*See* Doc. 4 at 7; Doc. 10 at 10–11.)

Plaintiff's allegation in the SAC that his access to mental health services was denied by the temporary removal of the television which he states that he needs for mental health reasons once again fail to allege facts plausibly suggesting any Defendant was aware of an excessive risk to his health and deliberately disregarded that risk, as there are no *factual* allegations regarding what medical needs went unmet or how he was injured as a result. *Id.*; *Jett*, 439 F.3d at 1096; *see also Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Iqbal,* 556 U.S. at 678 (a complaint is subject to dismissal for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," as the "mere possibility of misconduct" falls short of the plausibility standard.)

Plaintiff's Eighth Amendment cruel and unusual punishment claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim. *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004. Because Plaintiff has twice been informed of the same defect of pleading and it is now clear he is unable to state an Eighth Amendment

claim, this claim is dismissed without further leave to amend. *Schmier*, 279 F.3d at 824.

## III. Conclusion and Orders

For the reasons discussed, the Court:

1. **CONSTRUES** Plaintiff's letters (Doc. 13-1 and Doc. 13-2) as a motion for relief from judgment and a request for an extension of time to file the Second Amended Complaint.

2. **GRANTS** Plaintiff's motion for relief from judgement, **VACATES** the Court's April 15, 2026, Judgment of dismissal, and **GRANTS** Plaintiff's request for an extension of time to file the Second Amended Complaint.

3. **DISMISSES** Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) for failing to state a claim upon which relief may be granted without further leave to amend. The Clerk of Court shall enter a final judgment of dismissal accordingly and close the file.

**IT IS SO ORDERED**.

Dated: July 24, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE